UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KIMBERLEY MCKELVEY,

        *Plaintiff,*

vs.                                Civil Action No. 1:06-CV-01820-RMC

ELI LILLY AND COMPANY, an
Indiana corporation,

        *Defendant.*

_____/

**PLAINTIFF'S MEMORANDUM IN LAW IN OPPOSITION TO DEFENDANT ELI LILLY AND COMPANY'S MOTION TO TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA**

Plaintiff, KIMBERLEY MCKELVEY, by and through her undersigned attorney, hereby files her opposition to Defendant, Eli Lilly and Company's ("Lilly") Motion to Transfer this action to the Central District of California, and states as follows:

**I.    STANDARD FOR DETERMINING A TRANSFER MOTION BROUGHT PURSUANT TO 28 U.S.C. §1404(a)**

Lilly's motion to transfer is governed by 28 U.S.C. §1404(a), which provides: "For the *convenience of parties* and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." (Emphasis supplied). The D.C. Circuit "'has said that it is perhaps impossible to develop any fixed general rules on when cases should be transferred.'" *SEC v. Savoy Indus. v. Zimmerman*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Starnes v. McGuire*, 512 F.2d 918, 929 (D.C. Cir. 1974) (en banc)). "Thus, the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness." *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Lilly must make two showings to justify transfer. First, it must establish that the Plaintiff originally could have brought her action in the proposed transferee district. *Van Dusen v. Barrack*, 376 U.S. at 622. Second, it must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that court. *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). As this Court has explained,

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources
> of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Thayer/Patricof Educ. Funding LLC v. Pryor Res.*, 196 F.Supp.2d 21, 31-32 (D.D.C. 2002)(omission in original).

Plaintiff here concedes that, technically, this action could have been brought in California, even though she was unable to locate a California attorney to represent her there. However, Lilly has failed to demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to the Central District of California.

## II.    PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO DEFERENCE

It is well established that a plaintiff's choice of forum is entitled to deference and should rarely be disturbed. This proposition has been consistently upheld. *See Iragorri v. United Technology,* 274 F.3d 65 (2d Cir. 2001); *Thayer/Patricof*, 196 F. Supp. 2d at 31. A plaintiff's selection of forum is not only an acceptable litigation strategy, it is ethically

and professionally mandated if a more beneficial, alternative forum is available to a party. *See, e.g., Ferens v. John Deere Co.*, 494 U.S. 516 (1990); *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984). As one district court has stated:

> The existence of forum choices not only permits but indeed invites counsel in an adversarial system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause...a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

*Mohamed v. Mazda Motor Corp.*, 90 F.Supp. 2d 757, 772 (E.D. Tex.. 2000).

### A.    D.C. Is More Cost-Effective and Time-Efficient for Plaintiff and is Neutral to Defendant

In this case, Plaintiff has chosen the District of Columbia as her forum for several reasons. *See* Affidavit of Kimberley McKelvey, Exhibit A hereto. Her primary purpose is for a cost-effective and expeditious resolution of her case, since Washington–as opposed to California–is *more* convenient to her, her mother and her fiancé, *rather than less so.* As her Affidavit sets forth, Plaintiff made numerous attempts to locate a California attorney to handle her case in order to keep down her litigation costs, but she has learned that there are no attorneys actively handling DES litigation who practice within California. She has thus retained her undersigned counsel to prosecute this matter, but the undersigned practices in Florida and in Washington, D.C., not in California. This fact increases the cost and expense of the litigation by requiring that local California counsel, in addition to Plaintiff's existing counsel, be retained. It also means that litigation expenses will increase dramatically due to her attorney's cross-country travel for hearings and some depositions.

In addition, transfer of this case away from Plaintiff's chosen forum would cause

delay by having to start the entire scheduling and discovery process over again in California. The time factor is extremely important to Plaintiff since she has been told by adoption and/or gestational surrogacy agencies that her opportunities for a positive outcome – either adopting a child or having a surrogate carry one for her – decrease as her age increases.

>       **B.    Convenience of the Defendant, Other Witnesses and Access to Sources of Proof**

Plaintiff has already advised the Defendant that she will come to Washington, DC to their counsel's offices for her deposition, as will her fiancé and her mother. There are only two physicians who have treated her for her DES-related injuries and they have agreed to appear for deposition without need for subpoenas. Moreover, such depositions of physicians that are scheduled can be handled by telephone or videoconference which the parties have done many times in the past. Plaintiff's mother's prescribing physician is deceased, and any living partners are located outside the subpoena power of the California court anyway.

Plaintiff's retained expert witnesses in this case, who are the most experienced in the history and background of DES usage and effects, are all located on the east coast of the United States. At least one of Plaintiff's experts is located in Washington, DC. Moreover, the experts who are typically retained by Defendant are also located in the eastern half of the country: Florida, Massachusetts, New Jersey and Pennsylvania. Thus, it would be much more convenient for them, as well as cost-effective for Plaintiff, to maintain her case in Washington.

In addition, significant work up of this case has already occurred, and this Court has already expended time on it. A Rule 16.3 Joint Status Report has been prepared and

agreed upon by the parties with deadlines and other dates adopted by the Court with no previous mention of transfer having been made by Defendant. Scheduling and pretrial orders have all been entered. The Court has spent time on one scheduling conference already and is being asked to allocate time for oral argument on this motion. The Court has already set this matter down for pretrial conference and trial on its calendar. Substantial discovery has already occurred: Plaintiff has answered detailed interrogatories, and she has responded to Defendant's requests for production by providing copies of all of her medical records. In addition, she has provided signed medical authorizations to Lilly's counsel to enable them to obtain copies of these records directly from the providers *without subpoena*.

This last fact is especially significant, since Defendant's motion to transfer is based in great part on the claim that all witnesses and documents in this case reside and/or are located in California and that Defendant will thus need the subpoena power of the California courts to defend the action. This argument is unfounded. In dozens of prior DES cases, Plaintiff's counsel has voluntarily provided witnesses to defense counsel -- the plaintiffs themselves, husbands, parents, pharmacists and doctors -- for deposition upon only the Defendant's oral request. The Defendant routinely takes witness and expert depositions with plaintiffs' counsel's cooperation and consent. With regard to documents, plaintiffs regularly execute medical authorizations for production of records, as well as provide copies of all such records in their possession at the start of the case. In these respects, this case is no different than prior DES cases. As stated above, Plaintiff has already produced copies of all of her medical records, together with signed authorizations allowing the Defendant to obtain records directly from her health care

providers.

Moreover, the Defendant cannot show that it would be in any way inconvenienced by continuing to litigate this case in the District of Columbia since it has counsel in Washington, D.C. as well as in Los Angeles[1]. It has not demonstrated any great hardship such as "inability to travel, significant expense, or medical disability that would adversely affect its ability to litigate this case" in the District of Columbia. *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 50 (D.D.C. 2005). Indeed, the Defendant has resources that far outweigh any that Plaintiff could possibly muster, and it is for that reason that it seeks to transfer this and other DES cases. By applying financial pressure, the Defendant attempts to leverage its formidable resources against an individual plaintiff such as Ms. McKelvey. To the contrary, Lilly has itself frequently employed the courts of the District of Columbia for its own litigation. Lilly is incorporated and headquartered in Indiana, so a transfer to California really has no effect on it. Moreover, it is clear that this Court has developed unique experience in resolving these cases efficiently and expeditiously, while the California court does not have the same track record.

On the issues of exposure, product identification and injury which the Defendant states are the three major issues in DES litigation (*see* Memorandum of Points and Authorities in Support of Eli Lilly and Company's Motion to Transfer, hereinafter "Memorandum", at 5), Lilly need not subpoena any witnesses or documents on any of those issues. Plaintiff's mother's prescribing physician is deceased. Any other physicians

---

[1]In fact, the attorney who represents Lilly in its California DES litigation is located in Oakland, not Los Angeles, so he must travel from one end of the state to the other himself – hardly a convenience to Lilly.

who were members of that obstetric practice are either deceased or live outside the jurisdiction of the California courts, so would not be amenable to subpoena there either. Regarding product identification, the pharmacist specifically dispensing the prescription is not alive, but Plaintiff has identified two individuals from the pharmacies in question. These witnesses can be deposed, if requested, without subpoena. In addition, Plaintiff's mother has already expressed her willingness to appear in Washington, D.C. for her deposition.  On the issue of Plaintiff's injuries, it is true that Plaintiff's treating physicians are located in California. However, Plaintiff's physicians will agree to appear for deposition without subpoena. These depositions can be videotaped and used for trial if necessary.

Moreover, when analyzing the convenience of parties and witnesses, a defendant must show that witnesses would be unwilling to testify in the District of Columbia. *Thayer/Patricof*, 196 F. Supp. 2d at 32. Otherwise, it is assumed that the witnesses will voluntarily appear, *id.*, and mere inconvenience to the witnesses alone is not enough to warrant transfer, *id.* at 34. In addition, "to support its request for transfer under section 1404(a), a moving party must demonstrate...what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction." *Id.* at 33. While Lilly contends that key witnesses live in California, they neither state that these witnesses are necessary for trial, nor assert that they would be unwilling to travel to the District of Columbia (as Plaintiff, her mother and fiancé have advised they are). *See id.* at 32. Indeed, in the vast majority of DES cases litigated by undersigned counsel, treating physicians were not even deposed.

C.      **Where the Claim Arose**

-7-

Lilly argues that there is no "factual nexus" between Plaintiff's claim and the District of Columbia. In DES cases, it is hard to pinpoint exactly where a claim arose. Here, it is true that Plaintiff was exposed to DES in California where she resides. However, many of the underlying facts giving rise to DES claims occurred in Washington, D.C.[2] In addition, the actual manufacture and defective labeling of the drug occurred, in this case, in Lilly's manufacturing headquarters in Indianapolis, Indiana. Consequently, the District of Columbia does have historical ties to much of the factual bases for the liability aspects of Plaintiff's claim cause of action.

## III.   PUBLIC INTEREST FACTORS

Lilly's arguments regarding public interest considerations are similarly unpersuasive. It argues that California law will apply to this controversy, causing this factor to weigh in favor of transfer. While California substantive law may be applied, it raises no unusual difficulty for this Court, as Plaintiff's claims sound in basic negligence, strict liability and breach of warranty, and she has strong evidence of product identification. However, District of Columbia procedural law will also apply to this action, and since procedural issues including the statute of limitations are often the basis of attempts at summary judgment by the Defendant, this Court's familiarity with D.C. procedural law will be extremely beneficial, especially in comparison with a California

---

[2]*See, e.g.*, 1941 correspondence from the head of the Eli Lilly Medical Department to another drug company executive discussing the meetings of several of the major DES manufacturers in Washington, DC to discuss what information to provide to the FDA in their drug applications for DES. In it, he suggests that all companies' applications be provided to Mr. Carson Frailey, then the president of the American Drug Manufacturers' Association, at his Washington, DC office rather than to the FDA. Mr. Frailey was the chief lobbyist for the group, and had been recruited to meet with the DES makers and assist them in submitting the DES drug applications. Exhibit B hereto.

court's unlikely experience with the same.

Additionally, the D.C. Court's caseload makes it a much more attractive venue to Plaintiff than that of the Central District of California. For the 12-month period ending September 30, 2006, this Court had 2382 civil filings compared with 11,104 in the C.D. of California.[3] The Central District may have almost twice as many judges as the D.C. Court, but it has over *five times* as many case filings. Moreover, the Central District does not employ a fully functional electronic case filing system, requiring burdensome and expensive paper filings and service copies. "[Although] congestion alone is not sufficient reason for transfer, ..relative docket congestion and potential speed of resolution is an appropriate factor to be considered." *See Savoy Indus.*, 587 F.2d at 1156 (internal citation omitted). Finally, although there is some interest in "deciding local controversies at home," *Thayer/Patricof*, 196 F. Supp. 2d at 31-32, this action is not necessarily a controversy local to California. Millions of women around the country, including here in the District of Columbia, were exposed *in utero* to DES. And while California may well have an interest in seeing that claims of its citizens are treated fairly and efficiently, that interest will be better served by allowing this case to proceed in the District of Columbia due to this jurisdiction's greater familiarity and efficiency in dealing with DES litigation.

Most importantly, Lilly has not made the required substantial showing that transfer is necessary. *See Piper Aircraft*, 454 U.S. at 255 (1981) (stating that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in

---

[3]*See* Federal Court Management Statistics at  http://www.uscourts.gov/cgi-bin/cmsd2006.pl.

the alternative forum"). Even if, as Lilly contends, many of the facts did occur outside of the District of Columbia, it has not pointed to the existence of any factors that would cause it to experience extreme hardship in accessing evidence if this case were not transferred to the Central District of California. *See Piper Aircraft*, 454 U.S. at 258-59 (finding that because many crucial witnesses were located overseas and therefore beyond the reach of compulsory process, and because a large portion of the relevant evidence was located in Great Britain, private interest factors weighed in favor of transferring venue); *Thayer/Patricof*, 196 F. Supp. 2d at 36 (stating that "in the context of a motion for a transfer of forum, the location of documents, given modern technology, is less important in determining the convenience of the parties"). *See also Shenandoah Associates Ltd. Partnership v. Tirana,* 182 F.Supp 14, 25 (D.D.C.2001). Indeed, while it is true that some of the judges of this Court have on occasion granted transfer motions to Lilly, the majority of those motions filed have been denied.[4]

---

[4] At least a dozen motions to transfer have been denied in DES cases. *See, e.g., Scaramuzzi v. Eli Lilly and Co.*, Case No. 01-1095, Order denying defendant's motion to transfer by Judge Emmet G. Sullivan, 12/19/01; *Wieprecht v. Eli Lilly and Co.*, Case No. 01-0889, Order denying defendant's motion to transfer by Judge James Robertson, 12/6/01; *Peterson v. Eli Lilly and Co.*, Case No. 01-1404, Order denying defendant's motion to transfer by Judge Ellen S. Huvelle, 1/09/02; *Coy v. Eli Lilly and Co.*, Case No. 01-1072, Order denying defendant's motion to transfer by Judge John Garrett Penn, 1/23/02; *Sumrall v. Eli Lilly and Co.*, Case No. 01-0670, Order denying transfer, Judge Colleen Kollar-Kotelly; *Blank v. Eli Lilly and Co.*, Case No. 02-1976, Memorandum Opinion denying transfer, 12/13/02 by Judge Richard W. Roberts; *Roing, et al. v. Eli Lilly and Co.*, Case No. 02-2211, Order denying transfer, 1/2003, Judge John D. Bates; *Ingram v. Eli Lilly and Co.*, Case No. 02-2023, Order denying transfer, 1/28/03, Judge Reggie B. Walton; *Bailer v. Eli Lilly and Co.*, Case No. 02-1654, Order denying transfer, 4/17/03), Judge Ricardo M. Urbina; *Fastino v. Eli Lilly and Co.*, Case No. 02-02210, Order denying transfer, 10/8/03, Judge Henry H. Kennedy; *Dimanche v. Eli Lilly and Co.*, Case No. 03-236, Order denying transfer, 10/17/03, Judge John D. Bates; and *Miller v. Eli Lilly and Co.*, Case No. 03-896, Order denying transfer, 5/5/04, Judge Henry H. Kennedy.

## IV.    CONCLUSION

While 28 U.S.C. §1404(a) provides the means for seeking transfer of an appropriate case, the Defendant bears the burden of establishing that the transfer of an action is proper. Plaintiff concedes that this case could have been brought in California, but the Defendant has not met its burden of demonstrating that California is a *more convenient* forum and/or that the interests of justice would be better served there. To the contrary, Plaintiff submits her own Affidavit explaining to the Court that transfer of this case actually disadvantages her and is less convenient and cost effective than if the case is allowed to remain in Washington, DC.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant, Eli Lilly and Company's Motion to Transfer, and instead order that this matter proceed in the United States District Court for the District of Columbia as originally filed.

Dated April 2, 2007                             Respectfully submitted,

                                                PATRICIA MARTIN STANFORD, P.A.

                                                /s/ Patricia M. Stanford
                                                PATRICIA MARTIN STANFORD, ESQUIRE
                                                D.C. Bar No. 471672
                                                3609 Hendricks Avenue
                                                Jacksonville, Florida 32207
                                                904-346-4215   Fax 904-346-4275
                                                Pmslaw1@aol.com

                                                ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of April, 2007, I electronically filed the foregoing with the Clerk of the Court via ECF by which a notice of electronic filing will be sent to the following counsel of record for Defendant Eli Lilly and Company: John Chadwick Coots, Esquire, Emily J. Laird, Esquire, and Michelle R. Mangrum, SHOOK, HARDY & BACON, L.L.P.

/s/ Patricia M. Stanford
PATRICIA MARTIN STANFORD, ESQUIRE
ATTORNEY FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KIMBERLEY MCKELVEY,

          *Plaintiff,*

vs.

ELI LILLY AND COMPANY, an
Indiana corporation,

          *Defendant.*

Civil Action No. 06-CV01820 (RMC)

---

## AFFIDAVIT OF KIMBERLEY MCKELVEY

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I, KIMBERLEY MCKELVEY, being duly sworn, and under the pains and penalties of perjury under the laws of California, depose and say that the following is true and correct and based on my personal knowledge:

1.      That my name is Kimberley McKelvey, and I am the plaintiff in this action.

2.      That I am giving this affidavit in opposition to the motion of Eli Lilly and Company to transfer my case to the Central District of California.

3.      That I have been unable to locate a California attorney experienced in DES litigation who will accept my case, despite sincere and significant efforts to do so by both myself and my mother.

4.      That the only other attorneys who have similar experience to my current attorney, Ms. Stanford, are also located on the east coast of the country (New York and Washington, DC). After interviewing these attorneys, I was most comfortable with Ms. Stanford and chose her to handle my case.

5.      That the transfer of my case to California would actually be *less convenient* and *more expensive* for me than continuing to maintain it in the District of Columbia for several reasons:

■     Transfer would cause delay of my case by having to start the entire scheduling and discovery process over again. This time factor is extremely important to me because my purpose in bringing this case is to attempt to recover funds needed for adoption and/or gestational surrogacy. My opportunities to do either will be negatively impacted

by any delay in my case, since adoption agencies, and clinics with whom I have investigated gestational surrogacy, have advised me that my chances for a positive outcome – either adopting a child or having a surrogate carry one for me – decrease as my age increases.

■       A transfer would ultimately greatly increase the cost of the litigation to me, as my attorney would be required to make multiple trips to California to attend court hearings, as well as to attend the depositions of myself, my fiancé, my mother and any physicians the Defendant seeks to depose. There are only two physicians who have treated me for my DES-related injuries and they have agreed to appear for deposition without need for subpoenas.

■       I have already advised the Defendant, through my attorney, that I am willing to come to Washington, DC to their offices for my deposition, and my mother and fiancé are also willing to do so. If depositions of treating physicians are scheduled, my attorney is able to handle them by telephone or videoconference, saving me the expenses involved in her traveling to California. My mother's prescribing physician is deceased.

■       My attorney has advised me that the expert witnesses she has retained in my case, and who are the most experienced in the history of DES, are all located on the east coast, including at least one who is located in Washington, DC. Thus, it is much more convenient for them, as well as cost-effective for me, to maintain my case in Washington.

6.       That I thus respectfully request that the Court take these matters into consideration, and allow my case to move forward in the District of Columbia.

KIMBERLEY MCKELVEY

SWORN TO AND SUBSCRIBED before me this 02 day of April, 2007, by Kimberley McKelvey, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Robert D. Nesen II
(Print Name)

Notary Public, State of California

ROBERT D. NESEN II
Commission # 1578982
Notary Public - California
Los Angeles County
My Comm. Expires May 15, 2009

2

198b
*Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb),
dated May 13, 1941*

*Letter from*

## LETTER FROM DR. HINES (LILLY) TO DR. MORRELL (SQUIBB), DATED MAY 13, 1941

### ELI LILLY AND COMPANY
INDIANAPOLIS, U.S.A.

May 13, 1941

Dr. J. A. Morrell:
c/o E.R. Squibb & Sons
Biological Laboratories
New Brunswick, New Jersey

Dear Dr. Morrell:

Since talking with you on the phone yesterday, I had another conversation with Mr. Frailey and he gave me further details about the procedure of filing. I wish to acknowledge receipt of your letters of May 7 and 9. I would like to have as many answers as possible to the second questionnaire to forward to Washington. The following letter is being sent to all the firms in the joint filing agreement. Armour and Company has requested admission and I think they will have evidence of enough work on Stilbestrol so that we will hardly be justified in refusing to let them in. I have as yet received no data from the Wm. S. Merrell Company and since they have had two months to provide it, I think we will omit them.

"I have just talked to Mr. Carson P. Frailey, Executive Vice-President and Secretary of the American Drug Manufacturers Association, by telephone and he informs me that he is forwarding you a letter to the effect that he has reason to believe

that the Food
group need ha
Stilbestrol and
and our applic
ministration h
but this news
us to follow th

"The Small C
reports which
28 and in Nev
25. We sugge
filing of the
date, a consid
from the secon
at once any ad
questionnaire
draft of the m
ton the first of
ward us fiftee
the master fil
receive a dup

"Our plan is
the Food and
the group of
agreement an
evidence. *Ea*
*dition his ou*
*must be subm*
form and sho

  1) Maki
     evide

E-411

199b

*Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb),
dated May 13, 1941*

that the Food and Drug Administration does not feel that our
group need have further conferences with it on the subject of
Stilbestrol and that it invites the submission of the master file
and our applications for permits to market the drug. The Ad-
ministration has not, of course, committed itself in any way,
but this news is extremely encouraging. It seems in order for
us to follow these recommendations.

"The Small Committee for Stilbestrol has forwarded you two
reports which cover meetings held at Washington on January
28 and in New York City and Washington on March 24 and
25. We suggest that these be re-read in connection with the
filing of the new applications for Stilbestrol. Since the last
date, a considerable number of answers have been received
from the second questionnaire, and we are anxious to receive
at once any additional replies to either the first or the second
questionnaire so that they can be incorporated into the final
draft of the master file which we hope to submit to Washing-
ton the first of next week. It is urged that to save time you for-
ward us fifteen duplicates of each report submitted. When
the master file is complete each of the interested firms will
receive a duplicate copy.

"Our plan is to submit the master file of clinical evidence to
the Food and Drug Administration as a joint application from
the group of firms which have cooperated in the joint filing
agreement and which are entitled to refer to it for clinical
evidence. *Each manufacturer, must, of course, submit in ad-
dition his own individual application, and this application
must be submitted in duplicate.* These should follow the usual
form and should in addition:

    1) Make reference to the master file for clinical
       evidence.

200b

*Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb),*
*dated May 13, 1941*

2) Make request for re-instatement of previous applications for reference to the evidence therein contained.

3) Outline the process of manufacture of the drug, *including all details of the control of the process and of the finished product.* (This is a new ruling of the Administration which is most important to follow.)

4) Establish the identity of the drug.

5) Include samples of labels and of *all* professional literature regardless of whether or not it is to be included in the packages.

"Before a permit can become effective, the Administration must also receive a sample trade package in order to check the labels and statements.

"As you know, the Small Committee has been working on labels and on package and professional pamphlet literature on Stilbestrol. I expect to forward you samples of these within a very few days. While we have no assurance that the F.D.A. will approve these as they stand, we believe that they will meet with no serious objection, and we think a certain degree of uniformity will facilitate rapid approval by the Administration.

"The Small Committee recommends very strongly that this or essentially similar wording be used on your labels. It recommends that the literature be followed exactly regarding: a) Indications for use of the drug, and b) Dosage. It suggests that no substantial change be made in content of the statements regarding c) Precautions, and d) Contraindications and side-effects. The remaining portion of the literature may be followed or not at the discretion of each manufacturer.

201b

*Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb),
dated May 13, 1941*

"We understand that the Administration will hold all of these applications until all details regarding each have been straightened out, and that the approval of all will be made simultaneously. (Of course, the Administration has not committed itself to such approval.) It is plain, however, that the rapidity with which approval is obtained will depend on the slowest member of the group. In addition, it is possible that those firms which depart too radically from the recommendations of the Small Committee may be granted only conditional permits.

"If the Small Committee can be of any assistance to you in facilitating your application, or if you have any questions about the work of the Small Committee, we will be glad to have you write or phone us. We recommend strongly that all applications be submitted through Mr. Carson P. Frailey, 506 Albee Building, Washington, D.C., rather than direct to the Administration.

"Letters similar to this are being forwarded to:

> Abbott Laboratories
> Sharp and Dohme
> Winthrop Chemical Company, Inc.
> Merck & Company
> Charles E. Frosst & Company
> John Wyeth & Brother
> George A. Breon & Co.
> The Upjohn Company
> Ayerst, McKenna & Harrison
> The Armour Laboratories.

> Yours very truly,

> D.C. Hines, M.D.
> Medical Department
> ELI LILLY AND COMPANY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KIMBERLEY MCKELVEY,

                    Plaintiff,

vs.                                             CASE NO. 1:06-CV-01820-RMC

ELI LILLY AND COMPANY,

                    Defendant.
_____/

**[PROPOSED] ORDER DENYING MOTION TO TRANSFER**

UPON CONSIDERATION of Defendant's Motion to Transfer pursuant to 28 U.S.C.

§ 1404(a) and Plaintiffs' Opposition to Motion to Transfer, and for good cause shown, it is this

_____ day of _____, 2007,

ORDERED that Defendant's Motion to Transfer be and hereby is DENIED; and

AND IT IS FURTHER ORDERED that this case shall remain in the United States District

Court for the District of Columbia.



                                        _____
                                        THE HONORABLE ROSEMARY M. COLLYER
                                        UNITED STATES DISTRICT JUDGE


Copies to Counsel by ECF